A11A1071. DEMORY v. THE STATE.
(721 SE2d 93)

ADAMS, Judge.

The trial court granted an oral motion for mistrial asserted by Cedric Rafael Demory in his trial on charges of burglary, felony obstruction of an officer and misdemeanor possession of marijuana. Demory subsequently filed a "Plea of Former Jeopardy" on the ground that the mistrial was caused by the intentional misconduct of the prosecutor. The trial court denied that plea, and Demory appeals.

> Where, as here, a mistrial is granted at the request of a criminal defendant, retrial is not prohibited on the basis of double jeopardy unless it is established that the State intended to goad the defendant into moving for a mistrial in order for the State to avoid a reversal due to prosecutorial or judicial error, or otherwise to obtain a more favorable chance of a guilty verdict on retrial. Whether the prosecutor intended to goad the defendant into moving for mistrial

calls for the trial court to make a finding of fact by inferring the existence or nonexistence of intent from objective facts and circumstances. When the trial court sits as the fact-finder, its resolution of factual issues will be upheld by the appellate court unless it is clearly erroneous. A trial court's findings of fact will not be deemed to be clearly erroneous if there is any evidence to support them, and this holds true even if the findings are based upon circumstantial evidence and the reasonable inferences which flow from them.

(Citations and punctuation omitted.) *Brown v. State*, 303 Ga. App. 814 (694 SE2d 385) (2010). "It doesn't even matter that [the prosecutor] knows he is acting improperly, provided that his aim is to get a conviction. The only relevant intent is the intent to terminate the trial, not the intent to prevail at trial by impermissible means." (Citation and punctuation omitted.) *State v. Traylor*, 281 Ga. 730, 732 (642 SE2d 700) (2007).

The evidence at trial showed that the home of Jack and Violet Waldrip was burglarized on November 5, 2009. It appeared that someone broke into the Waldrips' house by breaking a glass door leading to a porch at the rear of the home and reaching in to unlock a deadbolt. Police lifted what appeared to be recent fingerprints from the door area and one of the prints was matched to Demory, who was subsequently arrested for the crime. Some of the items taken from the Waldrips' home were later produced by Shacara Rucker, a friend of the Waldrips and Demory's cousin, or recovered by Sheklia Rucker, Shacara's sister.

During the State's examination at trial of Dan Schraeder, an investigator with the Gainesville Police Department, the prosecutor asked whether Schraeder ever had the chance to meet Demory after his fingerprints had been discovered at the scene. Schraeder responded that he did meet Demory. Demory's attorney moved for a mistrial, arguing that this question was a violation of Demory's Fifth Amendment right to remain silent because there was no testimony that he had spoken to Demory as he had testified regarding other individuals. His attorney argued that the clear intent of the question was to let the jury know that "everybody else spoke to the police," but Demory had not. The prosecutor informed the trial court that, to the contrary, she had instructed the investigator not to comment on Demory's right to remain silent. The trial court denied Demory's motion.

Demory subsequently took the stand and testified that on the day of the robbery, his cousin Shacara asked him to drive her to a house he later learned was the Waldrips' house. He waited for her in the car and when she did not return, he went to the back door to find

her, and he placed his hand on the glass. They then drove to a pawnshop where Shacara attempted to sell jewelry, but was told it was worthless. In reviewing the events of that day on cross-examination, the prosecutor asked Demory, "Have you ever told the police officer about Shacara going into the house?" Demory replied, "I had never been questioned." His attorney then again moved for a mistrial on the ground that the question violated Demory's Fifth Amendment rights.

The prosecutor first attempted to defend the question as relevant, but after the trial court stated that he believed the question to be improper, she asked for curative instructions. The trial judge decided to take the night to consider the motion. The next morning, the prosecutor conceded that her research had shown that her question had been improper, but she argued against a mistrial, citing cases to assert that her question should be considered harmless error. The trial court ruled, however, that the question deprived Demory of a fair trial and granted the motion for mistrial. Afterward, the State re-indicted Demory on the same charges and also indicted Shacara Rucker as a co-defendant in the burglary, although she had not previously been indicted, and Demory filed his plea in bar.

At the hearing on Demory's plea, the prosecutor stated in her place that she did not intend to goad the defense in moving for a mistrial. She said the prosecution did not want a mistrial. The prosecutor believed that the trial was going very well, in fact "better than a lot of the cross-examinations that I have done in my career." She said that she had asked similar questions in other trials and that she was surprised when Demory's attorney asked for a mistrial. When she discovered in her research that the question was considered improper, she was "mortified." The prosecutor later took the stand and testified that she had been a lawyer for ten years, and that she had tried approximately seventy-five jury trials. The prosecutor stated that she felt that it was "very obvious" that Demory's trial testimony was not credible because she believed that he had given "multiple inconsistent statements throughout the course of his testimony, both direct and cross-examination, so I was very pleased with how the trial was going." She felt her question was relevant and because she did not realize it was improper, she felt the motion for mistrial would quickly be denied. But the prosecutor acknowledged that other members of the prosecution team appeared to be more concerned at the time about the propriety of the question.[1] She also

---

[1] Another attorney with less experience testified that she recognized immediately that they were heading for a mistrial. Nevertheless, this Court has acknowledged that the experience of the prosecutor is not determinative on the issue of whether to grant a double jeopardy plea in bar. *Brown v. State*, 303 Ga. App. at 817.

asserted that the prosecution team did not want a mistrial because they had to work "pretty hard" to track down and coordinate the witnesses, some of whom had left law enforcement.

The trial court denied Demory's plea in bar based upon the prosecutor's testimony that "she was unaware that this particular question under these particular circumstances would be an improper comment on the Defendant's right to remain silent"; the State's "diligent efforts" to save the case and oppose the motion for mistrial; and the tenor of the trial up to the point of the question. The court, who was there to observe the trial as it progressed, found the prosecutor's statement that the trial was going well to be credible.

Demory argues on appeal, however, that the question in this case was so "blatant and so contrary to the most basic rules of prosecutorial procedure and conduct" that it cannot be attributed to negligence. We disagree. The prosecutor's question in this case does not rise to the level of the prosecutorial misconduct in the cases upon which Demory relies. Compare, e.g., *Anderson v. State*, 285 Ga. App. 166, 167 (645 SE2d 647) (2007) (prosecutor elicited specific testimony from police officer that defendant refused to sign a waiver of his rights after being arrested); *Wilson v. State*, 233 Ga. App. 327, 329-330 (3) (503 SE2d 924) (1998) (physical precedent only) (prosecutor asked defendant if he had tried to negotiate a nolo contendere plea, which necessarily entails an admission of guilt,[2] to the charges at issue).

In denying the plea, the trial court stated that the prosecution's question was an unintentional reference to Demory's right to remain silent. We cannot say that this finding was clear error because the record contains evidence to support the trial court's conclusion that the prosecutor's question was not intended to goad the defense into seeking a mistrial. The prosecutor consistently opposed the mistrial and requested a curative instruction instead. The trial judge, who had the opportunity to observe the prosecutor's demeanor and the progress of the trial, found the prosecutor's explanation and assessment of the case to be credible. "Where, as here, the evidence authorized the trial court to find that the person in control of the prosecution did not instigate any such misconduct either directly or through collusion in order to goad the defendant into moving for a mistrial, double jeopardy does not bar retrial." (Punctuation and footnote omitted.) *Brown v. State*, 303 Ga. App. at 818.[3] See also

---

[2] "A plea of nolo contendere constitutes a plea of guilty except that it cannot work any civil disqualification upon the defendant." (Citation and punctuation omitted.) *McMahon v. State*, 308 Ga. App. 292, 294 (1) (a) (707 SE2d 528) (2011).

[3] Cf. *Williams v. State*, 258 Ga. 305, 312 (1) (A) (369 SE2d 232) (1988) (actions of the prosecutor constituting even intentional prosecutorial misconduct do not raise the bar of

*Allen v. State*, 302 Ga. App. 852, 854 (691 SE2d 908) (2010).
 *Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED OCTOBER 7, 2011 —
RECONSIDERATION DENIED DECEMBER 12, 2011 — 

 *Travis A. Williams, H. Bradford Morris, Jr., Larry L. Duttweiler,* for appellant.
 *Lee Darragh, District Attorney, Wanda L. Vance, Kelley M. Robertson, Assistant District Attorneys,* for appellee.

double jeopardy, notwithstanding the fact that the defendant was thereby deprived of due process of law, unless the prosecutor's actions were intended to subvert the protections afforded by the Double Jeopardy Clause).