**FOURTH DIVISION**
**DILLARD, P. J.,**
**RAY and SELF, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**April 12, 2017**

# In the Court of Appeals of Georgia

A17A0594. LEDFORD v. THE STATE.

SELF, Judge.

Natasha Ledford appeals from the trial court's order denying her plea in bar on double jeopardy grounds. In her sole enumeration of error, Ledford asserts that the trial court should have granted her plea in bar because the prosecutor's intentional conduct goaded her into requesting a mistrial. For the reasons explained below, we disagree and affirm.

> The general rule is that where a mistrial is granted at the behest of the defendant, a retrial is not barred by principles of double jeopardy unless the governmental conduct in question is intended to goad the defendant into moving for a mistrial. Even where a prosecutor's conduct is sufficient to justify a grant of mistrial, the conduct nevertheless does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the double jeopardy clause. To authorize the

grant of a plea of double jeopardy, the facts must warrant the conclusion that there was such an instigative intention.

(Citations and punctuation omitted.) *Spears v. State*, 234 Ga. App. 498, 499 (506 SE2d 446) (1998).

Here, the record shows that the trial court granted Ledford's motion to suppress the results of a horizontal gaze nystagmus test ("HGN"). At the beginning of the trial, the State provided to Ledford's counsel a video of her arrest from which the portions relating to the HGN test had been redacted.

During direct examination at trial of the police officer who arrested Ledford, the State asked, "What have you been trained, as far as how many clues [on the walk-and-turn evaluation] indicate impairment?" When the officer attempted to link a number of clues to "BAC level," defense counsel objected. After the State attempted to lay a foundation for testimony about the correlation between clues on a field sobriety test and blood-alcohol content outside the presence of the jury, the trial court sustained the defendant's objection to testimony "as to percentages" of blood alcohol. Before the jury returned to the courtroom, defense counsel stated:

> Your Honor, before we bring the jury back in - - it was actually - - I was watching [the solicitor] trying to make sure that we are all aware, including [the o]fficer [], that the evidence of the horizontal gaze

nystagmus test was suppressed so that we don't end up making a mistake of that. We're not going to talk about HGN, at all, and that way we don't end up having a mistrial. My client can't afford to try this case twice.

The trial court agreed, and the jury returned to the courtroom.

The State resumed direct examination of the police officer and she testified about the clues from various field sobriety tests indicating Ledford's impairment, Ledford's arrest, the reading of the implied consent notice, and Ledford's refusal to consent to a test. After establishing that the officer's patrol car was equipped with a camera that took a video, the following transpired:

Q. Was the camera functioning on the day you had this interaction with the defendant?
A. Yes, ma'am.
Q. And have you had a chance to view the video prior to testifying today?
A. Yes, ma'am.
Q. Was it a fair and accurate recording of the events that took place that day?
A. Yes, ma'am.
Q. Were there any additions, deletions or alterations to that video?
A. Yes, ma'am, for the HGN.

Ledford's counsel promptly moved for a mistrial based upon the reference to the HGN test, and the trial court granted it. During subsequent discussions about scheduling the case for a retrial, Ledford's counsel advised the trial court that he had filed a plea in bar, and the trial court responded, "I'm probably not going to grant it because it has to be intentional on the part of the State. And I don't know that I'm going to be able to find intentionality on their part." Ledford's counsel then argued:

> Your Honor, I don't blame any intention on the part of the solicitor's office. But I do find that it's quite intentional on behalf of the officer. And, Your Honor, before we got started with trial, after the trial and around the lunch break, my client overheard the solicitor's office mentioning that the officer really needed to leave and she was leaving by 1:30. And it's amazing that her departure - - what she blurted out was - - came out at almost exactly 1:30 when we were about to start the video and go on with the case. And it came with 10 to 15 minutes of us telling her - - at least me instructing her in open court, on the record, that we're not going to make any mention of the horizontal gaze nystagmus. I find that that's intentional on her part.

The State explained:

> You Honor, . . . when [the officer] was asked if the video in question had been altered, she said only the HGN but she truthfully answered an artfully (sic) worded question. And it wasn't - - but it wasn't to intentionally draw attention to the fact that the HGN existed. Certainly,

4

I could have phrased the question better but it was not intentional on my part and it wasn't the intention of [the o]fficer [] either. I was asking a standard foundational question to admit a video.

The trial court denied the plea in bar based upon the following findings:

There has to be a finding by the Court that it was something that was done intentionally by the prosecutor. The prosecutor is the state of Georgia represented by the solicitor general not a police officer.

The police officer is just their witness. And when asked a question, the witness is required to answer truthfully. And [the officer] was asked a question, that is a foundational question, . . . which is routine in the course of establishing the authenticity of a video. And by answering truthfully she brought that issue up that had been ruled on by the Court. But I don't find that it is such that it rises to the level of misconduct or intentional acts on behalf of the State.

On appeal, we must uphold the trial court's finding on the issue of the prosecutor's intent unless it is clearly erroneous. *Bryant v. State*, 305 Ga. App. 238, 239 (699 SE2d 433) (2010). In this case, the trial judge, who had the opportunity to observe the prosecutor's demeanor and the progress of the trial, accepted the prosecutor's explanation, and the evidence does "not demand a finding that the prosecutor goaded the defense into moving for a mistrial or tried to terminate the trial." Id. at 240.

5

Ledford asserts that we should nonetheless reverse the trial court based upon similarities between this case and our opinion in *Anderson v. State*, 285 Ga. App. 166 (645 SE2d 647) (2007). We disagree. In *Anderson*, a prosecutor with over 30 years experience elicited testimony during direct examination of a police officer that commented upon the defendant's right to remain silent. Id. at 167. We found "it impossible to believe that an error which is so blatant and so contrary to the most basic rules of prosecutorial procedure and conduct could have been simply a negligent act." (Citation and punctuation omitted.) Id. at 168. In this case, however, it can be concluded that the prosecutor negligently asked a routine foundation question for the admission of a video that resulted in the police officer's response about the HGN test.

We likewise find no merit in Ledford's contention that the trial court's earlier ruling that the police officer could not testify about blood alcohol percentages based upon clues from field sobriety tests proves that the prosecutor intentionally goaded him into seeking a mistrial "to change the course of the trial." The transcript shows that while the State could not introduce this specific evidence it introduced ample other evidence of Ledford's impairment. Additionally, she was charged with driving under the influence to the extent it was less safe for her to drive under OCGA § 40-6-

6

391 (a) (1), not a per se violation under OCGA § 40-6-391 (a) (5). Accordingly, the State's failed attempt to submit evidence of blood alcohol percentages did not negatively impact the State's ability to prove its case. Finally, as in *Demory v. State*, 313 Ga. App. 265 (721 SE2d 93) (2011), "[t]he prosecutor consistently opposed the mistrial. . . ." Id. at 268.

For all of the foregoing reasons, we affirm the trial court's denial of Ledford's plea in bar.

*Judgment affirmed. Dillard, P. J. and Ray, J., concur*.